## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

THE CENTER FOR MEDICAL )
PROGRESS, a California corporation, )
and DAVID DALEIDEN, an individual, )
                            )
      Plaintiffs,      )   **Case No.**
                            )
PLANNED PARENTHOOD )
FEDERATION OF AMERICA, a New )
York corporation, )
                            )
      Defendant.     )
                            )

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiffs, David Daleiden and The Center for Medical Progress, by and through counsel, complain as follows:

### INTRODUCTION

1.    For over 20 years, Defendant Planned Parenthood Federation of America ("PPFA"), the largest elective abortion provider in the United States, has permitted and even encouraged its abortion clinics to supply aborted human fetuses, fetal organs, and fetal tissues for research experimentation, frequently in exchange for valuable consideration paid to the clinics. In the summer of 2015, Plaintiffs David Daleiden and the Center for Medical Progress ("CMP") released a series of undercover videos showing high-level Planned Parenthood officials from PPFA and from regional Planned Parenthood offices candidly discussing the PPFA network's questionable practices in their abortion and fetal tissue harvesting programs.

2.    As but one example, in the first video released, PPFA's Senior Director of Medical Services suggested prices "per-specimen" of fetal tissue, and advised that in her Planned Parenthood clinics, "We've been very good at getting heart, lung, liver, because we know, so I'm

not gonna crush that part, I'm gonna basically crush below, I'm gonna crush above, and I'm gonna see if I can get it all intact," and described using ultrasound guidance to flip the position of a living fetus to feet-first in order to extract the fetus whole, remarking, "We've been pretty successful with that, I'd say."

3.    The Videos focused attention both on PPFA's fetal tissue research programs and on its clinics' relationships with third-party vendors of human fetal tissue, prompting two comprehensive, year-long Congressional investigations. Both Congressional investigations issued criminal referrals to the FBI and U.S. Department of Justice ("DOJ") against PPFA, multiple PPFA regional affiliates, and their business partners for selling fetal tissue against the law. DOJ then launched a criminal investigation into Planned Parenthood and others. And one of the third-party fetal-tissue vendors, DaVinci Biosciences, admitted guilt for illegally selling fetal body parts from PPFA affiliate Planned Parenthood of Orange & San Bernardino Counties in a $7.8 million settlement with the Orange County District Attorney. The D.A. credited Plaintiffs' undercover video reporting with prompting the successful case. In September 2018, the Department of Health and Human Services terminated its contracts with Planned Parenthood partner Advanced Bioscience Resources ("ABR"), stating it could not be "sufficiently assured" that ABR's supply complied with the federal law against selling fetal tissue.

4.    When PPFA retaliated against Plaintiffs' reporting by filing a civil lawsuit against them in January 2016 in San Francisco federal court, PPFA specifically omitted a claim for defamation. In sworn deposition testimony, the Planned Parenthood leadership from the Videos repeatedly admitted that the undercover videos recorded their actual statements, and at trial, PPFA agreed to a stipulation that the words used by Planned Parenthood officials on the Videos "were spoken by those persons."

5.      Yet, on September 18, 2019 (on the eve of trial in PPFA's lawsuit), PPFA's Senior Vice President of Communication and Culture Melanie Newman falsely issued a statement to media, published in Rewire News, that Daleiden and CMP "manufacture[d] a fake smear campaign against Planned Parenthood." And on November 15, 2019, PPFA falsely tweeted from its official Twitter account that Daleiden and others associated with CMP "created a false smear campaign against Planned Parenthood." In reality, as PPFA and its representatives recorded on the Videos readily admit in other fora, Plaintiffs' videos accurately record Planned Parenthood officials' own shocking words spoken in real life.

6.      Daleiden and CMP therefore bring this action under New York law to be made whole for the substantial reputational, emotional, financial, and other damages they have suffered as a result of PPFA's objectively false assertions about them, and for injunctive relief to prevent ongoing harm from PPFA's false statements.

**PARTIES**

7.      Plaintiff David Daleiden is an individual residing in the state of California. He is an investigative journalist who founded CMP to monitor and report on medical ethics and advances.

8.      CMP is a non-profit public benefit corporation whose principal place of business and registered office is in California. CMP comprises a group of citizen journalists dedicated to monitoring and reporting on medical ethics and advances with a special focus on bioethical issues impacting human dignity.

9.      Defendant PPFA is a 501(c)(3) organization headquartered in New York and is the largest provider of elective abortions in the United States. PPFA oversees a network of approximately 59 regional affiliated franchises across the country, all of which are required by

PPFA to perform abortions. In 2018, the most recent year for which numbers are available, the PPFA network reported performing 345,672 abortions, which is approximately 40% of the total abortions performed in the United States. PPFA receives taxpayer funding.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction under 42 U.S.C. § 1332, because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) because PPFA's national headquarters are in this district and a substantial part of the events that gave rise to this action's claims occurred in this district.

## GENERAL ALLEGATIONS

### The "Human Capital Project" Videos

12.     In 2013, Daleiden and CMP launched an investigative reporting project, released in 2015 as the "Human Capital Project," to investigate, document, and report on questionable practices involving the trade in aborted fetal tissue and organs. These practices include the sale of fetal tissue for valuable consideration, the modification of abortion procedures to obtain fetal tissue for federally-funded research, partial-birth abortions, and the killing of babies born alive following abortion procedures.

13.     As part of the Human Capital Project, Mr. Daleiden performed undercover investigations of a nature typical in investigative journalism, including attending abortion industry tradeshows under an assumed name and speaking with abortion providers and fetal tissue procurement company executives. Mr. Daleiden's video recorded many such activities in the course of undercover investigation ("the Videos").

4

14.     The Videos truly and accurately memorialized the statements these representatives made to Daleiden and other CMP investigators during their discussions. Each time Mr. Daleiden and CMP released a new undercover video in the Human Capital Project series, they published the full footage of the conversation with the Planned Parenthood representative, alongside a shorter summary version presenting the most significant parts of the conversation.

### Public Reaction to the "Human Capital Project" Videos

15.     The public's reaction to the Videos resulted in widespread public controversy about PPFA and its fetal tissue procurement and distribution practices.

16.     As a result of that controversy, Congress began two comprehensive, year-long investigations, one at the Senate Judiciary Committee and one at the House Energy & Commerce Committee's Selective Investigative Panel. These two nationwide investigations reviewed tens of thousands of pages of primary source documents and conducted hundreds of hours of witness interviews, ultimately issuing dozens of criminal and regulatory referrals for PPFA, its affiliates, and its business partners in the fetal tissue trade to local, state, and federal law enforcement.

17.     The Videos focused attention both on PPFA's fetal tissue research programs and on its clinics' relationships with third-party vendors of human fetal tissue, such as DaVinci Biosciences, LLC and Advanced Bioscience Resources, Inc. ("ABR.") In December 2017, the DOJ announced it had launched a criminal investigation of Planned Parenthood and others following up on the Congressional referrals. The same week, DaVinci Biosciences admitted to illegally selling fetal body parts from PPFA affiliate Planned Parenthood of Orange & San Bernardino Counties as part of a $7.8 million settlement with the Orange County (California) District Attorney, and the D.A. credited Plaintiffs' undercover video reporting with prompting the successful case. In September 2018, the Department of Health and Human Services terminated its

contracts with Planned Parenthood partner Advanced Bioscience Resources, stating it could not be "sufficiently assured" that ABR's supply complied with the federal law against selling fetal tissue.

18.    In January 2019, the Fifth Circuit United States Court of Appeals dissolved an injunction against the Texas Health and Human Service Commission's ("THHSC's") decision to terminate Medicaid provider agreements with PPFA's Texas regional affiliates based on Plaintiffs' undercover videos. The Fifth Circuit noted that the THHSC's Office of Inspector General "submitted a report from a forensic firm concluding that the video was authentic and not deceptively edited." *Planned Parenthood of Greater Texas Family Planning & Prevention Health Servs., Inc. v. Smith*, 913 F.3d 551, 559, n. 6 (5th Cir.), *reh'g en banc granted sub nom. Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Smith*, 914 F.3d 994 (5th Cir. 2019). The Fifth Circuit thus concluded the district court's statement that the videos had not been authenticated and may have been deceptively edited was "inaccurate[]." *Id.* at 559.

19.    In general, therefore, the Videos generated a tremendous amount of attention and controversy, including: considerable negative publicity for abortion providers that engage in fetal tissue transfers, such as the PPFA network; investigations and criminal referrals by two Congressional committees; the liquidation of criminal fetal tissue business partners of the PPFA network; and reforms to federally-sponsored fetal experimentation programs.

### PPFA Lawsuit

20.    In January 2016, PPFA and several of its affiliates filed a 15-count lawsuit against Daleiden, CMP, and associates, alleging everything from violation of the Racketeering Influenced and Corrupt Organizations (RICO) Act to trespass to invasion of privacy.

21.     PPFA specifically refrained, however, from bringing a defamation claim, which would have addressed the primary issue of whether the Videos were false. PPFA was thus unable to seek damages for harm resulting to its reputation as a result of the videos.

22.     Indeed, PPFA even stipulated that "the words used by [Planned Parenthood] personnel . . . in the video recorded by defendants were spoken by those persons." (*See* Exhibit A, relevant excerpts from *Planned Parenthood et al. v. CMP et al.*, C16-0236-WHO, United States District Court, Northern District of California, Transcript of Jury Trial Proceedings dated November 6, 2019, 7:30 a.m. at 3465:13-1.) Additionally, Planned Parenthood leadership from the Videos gave deposition testimony in the federal lawsuit that the undercover videos recorded their actual statements.

23.     The final jury instructions made this all the more clear, when the district court "emphasized" that the case "is not about the truth of whether [Planned Parenthood] profited from the sale of fetal tissue or otherwise violated the law in securing tissue for those programs. It is not about whether any Plaintiff actually engaged in illegal conduct." (*See* Exhibit B, *Planned Parenthood et al. v. CMP et al.*, United States District Court, Northern District of California, Final Jury Instructions, dated November 12, 2019, at 8.)

24.     PPFA has scrupulously avoided challenging the veracity of these videos, perhaps to avoid putting its fetal harvesting practices on trial.

### PPFA's Defamatory Statements

25.     In the fall of 2019, PPFA took a different approach to swaying the court of public opinion. While refusing to place the core issue of whether the Videos depicted the truth under judicial scrutiny, PPFA began falsely denying their accuracy outside the courtroom walls.

26.    On September 18, 2019, PPFA's Senior Vice President of Communication and Culture Melanie Newman issued a statement to media, published in Rewire News, that Daleiden and CMP "*manufacture[d] a fake* smear *campaign* against Planned Parenthood."[1] (Emphasis added.)

27.    Similarly, on November 15, 2019, PPFA tweeted from its official Twitter account that Daleiden and associates "*created a false* smear *campaign* against Planned Parenthood." (Emphasis added.)[2]

28.    Each of these statements is provably false.

29.    Plaintiffs' public media releases of undercover videos accurately reported the words of Planned Parenthood's officials discussing the PPFA network's abortion and fetal tissue harvesting programs. PPFA's stipulation in its civil case against Daleiden acknowledges the words stated by Planned Parenthood officials in the Videos were actually spoken by those persons.

31.    The contents of the Videos are true and accurate, and thus Defendant's statements are provably false.

30.    PPFA published its statements with actual malice.

32.    PPFA's reputation and political standing had been significantly harmed by the accurate depiction of events in the Videos. PPFA thus had reason to be personally biased against and harbor political animosity toward Daleiden, animating its hostility toward Daleiden and CMP. PPFA also made its statements despite knowing that its clinics had received payments priced per

---

[1] Helen Christophi, "Anti-Choice Activist David Daleiden Gets Bad News in Court," Rewire.News, September 18, 2019, https://rewire.news/article/2019/09/18/anti-choice-activist-david-daleiden-gets-bad-news-in-court/.
[2] https://twitter.com/PPFA/status/1195457565930467329.

8

fetal specimen, and that its clinicians had changed the way they performed abortions in order to obtain more usable fetal specimens.

33. Alternatively, PPFA made its defamatory statements in reckless disregard of the truth given the clear evidence on the Videos that Planned Parenthood clinics received payments priced per fetal specimen, and Planned Parenthood clinicians changed the way they did abortions in order to obtain more usable fetal specimens.

34.    Since PPFA's blatantly and provably false statements were made with actual malice, they have presumptively caused Plaintiffs actual damages, including reputational harm, personal humiliation, emotional distress, anxiety, and impairment of quality of life.

## COUNT I

### Defamation *Per Se*

35.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 49 above.

36.    PPFA, by and through Senior Vice President of Communication and Culture Melanie Newman and PPFA's official Twitter account, published the statements set forth in paragraphs 25 and 26 above directly to third parties, including to Rewire News and its readership, and to the widespread audience of its public Twitter account.

37.    The statements directly concerned Daleiden and CMP. The statement to Rewire News, as recounted in paragraph 25 above, specifically occurred in the following excerpt: "Melanie Newman, a spokesperson for [PPFA], said in a statement that *Daleiden* and Merritt should face the legal consequences of their 'multiyear illegal effort to manufacture a fake smear campaign against Planned Parenthood." (Emphasis added.) To the extent Daleiden founded and conducted his undercover investigation through CMP, this statement also clearly concerned CMP. PPFA's Twitter statement also concerned both Plaintiffs, specifically stating that "the so-called

'Center for Medical Progress,' David Daleiden, and others [] created a false smear campaign against Planned Parenthood."

38. For the reasons described above, a reasonable reader would have understood the challenged statements to mean that Plaintiffs had "created" or "manufactured" video footage that was "false" or "fake," in an effort to harm ("smear") the Defendant. The statements constitute accusations of concrete, wrongful conduct, and thus are not abstract statements of opinion.

39. The statements are defamatory *per se*, because they tend to injure Plaintiffs in their business, trade, or profession, and this tendency is apparent from the face of the statements. Specifically, Plaintiffs are in the business of truthful and accurate investigatory reporting by use of authentic undercover video footage, and the statements accused them of false and deceitful reporting and producing inauthentic video footage.

40. The statements were published without privilege.

41. The statements were published with actual malice, since at the time of their publication PPFA had reason to be personally biased and politically motivated against Daleiden. PPFA also made the statements despite multiple sworn admissions from Planned Parenthood leadership that the undercover videos recorded their actual statements, and despite PPFA's prior judicial stipulation that the words used by Planned Parenthood officials on the Videos "were spoken by those persons." Additionally, PPFA made the statements despite knowing that its clinics had received payments priced per fetal specimen, and that its clinicians had changed the way they performed abortions in order to obtain more usable fetal specimens.

42. For the reasons described above, the statements presumptively caused Daleiden actual damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment against the Defendant and the following relief:

A.     For judgment in favor of Plaintiffs and against Defendant;

B.     For actual and punitive damages in an amount exceeding $75,000, including damages necessary to make Plaintiffs whole for the presumptive impairment to their reputation, personal humiliation, mental anguish and suffering; and punitive and exemplary damages, in an amount necessary to punish PPFA for its malicious conduct toward Plaintiffs;

C.     For an injunction ordering PPFA to retract and remove all false statements concerning CMP or Daleiden contained on its Twitter account or stated to Rewire News, and to issue a publicly accessible correction of these statements.

D.     For pre-judgment and post-judgment interest.

E.     For costs of the suit incurred herein;

F.     For such other and further relief as the court deems just and proper.

THE PLAINTIFFS DEMAND A JURY TRIAL.

Dated this Day 17, September, 2020

> Respectfully submitted,
>
> Christopher A. Ferrara (Bar No. CF-7123)
> NY Reg. No. 1004407
> 148-29 Cross Island Parkway
> Whitestone, Queens, New York 11357
> Tel: (718) 357-1040
> cferrara@thomasmoresociety.org
> Special Counsel to the Thomas More Society
>
> *Attorney for Plaintiffs*

Thomas Brejcha, *pro hac vice* pending
(IL Bar No. 0288446)
Peter Breen, *pro hac vice* pending
(IL Bar No. 6271981)
Michael McHale, *pro hac vice* pending
(NE Bar No. 24949)
THOMAS MORE SOCIETY
309 W. Washington St., #1250
Chicago, IL 60606
Tel: (312) 782-1680
Fax: (312) 782-1887
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org
mmchale@thomasmoresociety.org

*Attorneys for Plaintiffs*


Harmeet K. Dhillon
(NY Reg. No. 2667350)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
Tel: 415-433-1700
Fax: 415-520-6593
harmeet@dhillonlaw.com

*Attorney for Plaintiff*

Ronald D. Coleman
(NY Reg. No. 2288835)
DHILLON LAW GROUP INC.
256 5th Ave., 4th Floor
New York, NY 10001
Tel: 347-996-4840
Fax: 646-358-8082
rcoleman@dhillonlaw.com

*Attorney for Plaintiff*

VERIFICATION

I, DAVID DALEIDEN, individually and on behalf of the THE CENTER FOR MEDICAL PROGRESS, INC. hereby affirm that the information contained in the above VERIFIED COMPLAINT AND JURY DEMAND is true and accurate to the best of my information, knowledge, and belief.

David Daleiden, individually and
on behalf of the Center for Medical Progress, Inc.

# Exhibit A

Volume 18

Pages 3443 - 3565

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK, JUDGE

PLANNED PARENTHOOD FEDERATION OF        )
AMERICA, INC., et al.,                  )
                                        )
              Plaintiffs,               )
  vs.                                   )  No. C 16-0236 WHO
                                        )
CENTER FOR MEDICAL PROGRESS,            )
et al.,                                 )  San Francisco, California
                                        )  Wednesday
              Defendant.                )  November 6, 2019
_____ )  7:30 a.m.

TRANSCRIPT OF JURY TRIAL PROCEEDINGS

APPEARANCES:

For Plaintiffs:

                    ROGERS JOSEPH O'DONNELL
                    311 California Street
                    10th Floor
                    San Francisco, California  94104
            BY:  AMY LYNNE BOMSE, ESQ.


                    ARNOLD AND PORTER KAYE SCHOLER LLP
                    Three Embarcadero Center
                    10th Floor
                    San Francisco, California  94111
            BY:  SHARON D. MAYO, ESQ.
                 JEREMY KAMRAS, ESQ.
                 STEVEN L. MAYER, ESQ.


        (APPEARANCES CONTINUED ON FOLLOWING PAGE)


Reported By:  Debra L. Pas, CSR 11916, CRR, RMR
              Belle Ball, CSR 8785, CRR, RMR
              Official Reporters - US District Court

**PROCEEDINGS**

1      The next inference:  Annamarie Bettisworth Davin's goal in

2 working for CMP was to harm Planned Parenthood.

3      Next inference:  Annamarie Bettisworth Davin used a false

4 identity to gain entry to and videotape at a NAF conference

5 that required identification.

6      The final inference:  Annamarie Bettisworth Davin provided

7 false information, including the BioMax brochure, to gain the

8 trust of Planned Parenthood employees, to further her goal of

9 ending abortion.

10      So those are the inferences that you may take with respect

11 to those -- but are not required to take, with respect to those

12 three witnesses.

13      In addition, on a different subject, the parties have

14 agreed on a stipulation, which is that the words used by

15 plaintiffs' personnel and the defendants in videos recorded by

16 the defendants were spoken by those persons.

17      And with that, who is the next witness, Mr. LiMandri?

18      **MR. LIMANDRI:**  At this time, Your Honor, the defense

19 would like to call Mr. Paul Zimmer to the stand, please.

20      **THE COURT:**  Great.

21     Come on up, Mr. Zimmer.

22                    **PAUL ZIMMER**,

23 called as a witness for the Defendants, having been duly sworn,

24 testified as follows:

25      **THE CLERK:**  Be seated.

## CERTIFICATE OF REPORTER

We certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_Debra L. Pas_

Debra L. Pas, CSR 11916, CRR, RMR, RPR

_Belle Ball_

Belle Ball, CSR 8785, CRR, RMR, RPR

Wednesday, November 6, 2019

# EXHIBIT B

Case 1:20-cv-07670-CM   Document 4   Filed 09/18/20   Page 19 of 48
Case 1:20-cv-07670   Document 1   Filed 09/17/20   Page 19 of 20

Case 3:16-cv-00236-WHO   Document 1006   Filed 11/12/19   Page 1 of 105

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., | Case No. 16-cv-00236-WHO |
| Plaintiffs, | **FINAL JURY INSTRUCTIONS** |
| v. | |
| CENTER FOR MEDICAL PROGRESS, et al., | |
| Defendants. | |

TABLE OF CONTENTS

I.   INTRODUCTORY AND MISCELLANEOUS INSTRUCTIONS.........................................7

1.   Duty of Jury - Instructions .......................................................................................7

2.   Matters Not to be Decided by the Jury .....................................................................8

3.   Burden of Proof – Preponderance of Evidence.........................................................9

4.   Burden of Proof __ Clear and Convincing Evidence.................................................10

5.   Two or More Parties – Different Legal Rights .........................................................11

6.   What is Evidence .....................................................................................................12

7.   What is Not Evidence ..............................................................................................13

8.   Evidence for Limited Purpose.................................................................................14

9.   Direct and Circumstantial Evidence .......................................................................15

10.  Ruling on Objections ...............................................................................................16

## 2.      Matters Not to be Decided by the Jury

The claims and defenses in this case concern the strategies chosen and employed by the Defendants, and I limited the evidence accordingly. I need to emphasize what this case is not about. It is not about the truth of whether Plaintiffs profited from the sale of fetal tissue or otherwise violated the law in securing tissue for those programs.  It is not about whether any Plaintiff actually engaged in illegal conduct.  It is not about whether abortion is good or bad. Those issues are a matter of dispute between the parties in the world outside this courtroom. In this courtroom your job is to consider the evidence related to the claims and defenses in this case in accordance with the instructions that I give you.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| THE CENTER FOR MEDICAL PROGRESS, a California corporation, and DAVID DALEIDEN, an individual, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | **Case No.** |
| | ) | |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, a New York corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

**VERIFIED COMPLAINT AND JURY DEMAND**

Plaintiffs, David Daleiden and The Center for Medical Progress, by and through counsel, complain as follows:

**INTRODUCTION**

1.      For over 20 years, Defendant Planned Parenthood Federation of America ("PPFA"), the largest elective abortion provider in the United States, has permitted and even encouraged its abortion clinics to supply aborted human fetuses, fetal organs, and fetal tissues for research experimentation, frequently in exchange for valuable consideration paid to the clinics. In the summer of 2015, Plaintiffs David Daleiden and the Center for Medical Progress ("CMP") released a series of undercover videos showing high-level Planned Parenthood officials from PPFA and from regional Planned Parenthood offices candidly discussing the PPFA network's questionable practices in their abortion and fetal tissue harvesting programs.

2.      As but one example, in the first video released, PPFA's Senior Director of Medical Services suggested prices "per-specimen" of fetal tissue, and advised that in her Planned Parenthood clinics, "We've been very good at getting heart, lung, liver, because we know, so I'm

1

not gonna crush that part, I'm gonna basically crush below, I'm gonna crush above, and I'm gonna see if I can get it all intact," and described using ultrasound guidance to flip the position of a living fetus to feet-first in order to extract the fetus whole, remarking, "We've been pretty successful with that, I'd say."

3.      The Videos focused attention both on PPFA's fetal tissue research programs and on its clinics' relationships with third-party vendors of human fetal tissue, prompting two comprehensive, year-long Congressional investigations. Both Congressional investigations issued criminal referrals to the FBI and U.S. Department of Justice ("DOJ") against PPFA, multiple PPFA regional affiliates, and their business partners for selling fetal tissue against the law. DOJ then launched a criminal investigation into Planned Parenthood and others. And one of the third-party fetal-tissue vendors, DaVinci Biosciences, admitted guilt for illegally selling fetal body parts from PPFA affiliate Planned Parenthood of Orange & San Bernardino Counties in a $7.8 million settlement with the Orange County District Attorney. The D.A. credited Plaintiffs' undercover video reporting with prompting the successful case. In September 2018, the Department of Health and Human Services terminated its contracts with Planned Parenthood partner Advanced Bioscience Resources ("ABR"), stating it could not be "sufficiently assured" that ABR's supply complied with the federal law against selling fetal tissue.

4.      When PPFA retaliated against Plaintiffs' reporting by filing a civil lawsuit against them in January 2016 in San Francisco federal court, PPFA specifically omitted a claim for defamation. In sworn deposition testimony, the Planned Parenthood leadership from the Videos repeatedly admitted that the undercover videos recorded their actual statements, and at trial, PPFA agreed to a stipulation that the words used by Planned Parenthood officials on the Videos "were spoken by those persons."

5.       Yet, on September 18, 2019 (on the eve of trial in PPFA's lawsuit), PPFA's Senior Vice President of Communication and Culture Melanie Newman falsely issued a statement to media, published in Rewire News, that Daleiden and CMP "manufacture[d] a fake smear campaign against Planned Parenthood." And on November 15, 2019, PPFA falsely tweeted from its official Twitter account that Daleiden and others associated with CMP "created a false smear campaign against Planned Parenthood." In reality, as PPFA and its representatives recorded on the Videos readily admit in other fora, Plaintiffs' videos accurately record Planned Parenthood officials' own shocking words spoken in real life.

6.       Daleiden and CMP therefore bring this action under New York law to be made whole for the substantial reputational, emotional, financial, and other damages they have suffered as a result of PPFA's objectively false assertions about them, and for injunctive relief to prevent ongoing harm from PPFA's false statements.

## PARTIES

7.       Plaintiff David Daleiden is an individual residing in the state of California. He is an investigative journalist who founded CMP to monitor and report on medical ethics and advances.

8.       CMP is a non-profit public benefit corporation whose principal place of business and registered office is in California. CMP comprises a group of citizen journalists dedicated to monitoring and reporting on medical ethics and advances with a special focus on bioethical issues impacting human dignity.

9.       Defendant PPFA is a 501(c)(3) organization headquartered in New York and is the largest provider of elective abortions in the United States. PPFA oversees a network of approximately 59 regional affiliated franchises across the country, all of which are required by

3

PPFA to perform abortions. In 2018, the most recent year for which numbers are available, the PPFA network reported performing 345,672 abortions, which is approximately 40% of the total abortions performed in the United States. PPFA receives taxpayer funding.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction under 42 U.S.C. § 1332, because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) because PPFA's national headquarters are in this district and a substantial part of the events that gave rise to this action's claims occurred in this district.

## GENERAL ALLEGATIONS

### The "Human Capital Project" Videos

12.     In 2013, Daleiden and CMP launched an investigative reporting project, released in 2015 as the "Human Capital Project," to investigate, document, and report on questionable practices involving the trade in aborted fetal tissue and organs. These practices include the sale of fetal tissue for valuable consideration, the modification of abortion procedures to obtain fetal tissue for federally-funded research, partial-birth abortions, and the killing of babies born alive following abortion procedures.

13.     As part of the Human Capital Project, Mr. Daleiden performed undercover investigations of a nature typical in investigative journalism, including attending abortion industry tradeshows under an assumed name and speaking with abortion providers and fetal tissue procurement company executives. Mr. Daleiden's video recorded many such activities in the course of undercover investigation ("the Videos").

4

14.    The Videos truly and accurately memorialized the statements these representatives made to Daleiden and other CMP investigators during their discussions. Each time Mr. Daleiden and CMP released a new undercover video in the Human Capital Project series, they published the full footage of the conversation with the Planned Parenthood representative, alongside a shorter summary version presenting the most significant parts of the conversation.

## Public Reaction to the "Human Capital Project" Videos

15.    The public's reaction to the Videos resulted in widespread public controversy about PPFA and its fetal tissue procurement and distribution practices.

16.    As a result of that controversy, Congress began two comprehensive, year-long investigations, one at the Senate Judiciary Committee and one at the House Energy & Commerce Committee's Selective Investigative Panel. These two nationwide investigations reviewed tens of thousands of pages of primary source documents and conducted hundreds of hours of witness interviews, ultimately issuing dozens of criminal and regulatory referrals for PPFA, its affiliates, and its business partners in the fetal tissue trade to local, state, and federal law enforcement.

17.    The Videos focused attention both on PPFA's fetal tissue research programs and on its clinics' relationships with third-party vendors of human fetal tissue, such as DaVinci Biosciences, LLC and Advanced Bioscience Resources, Inc. ("ABR.") In December 2017, the DOJ announced it had launched a criminal investigation of Planned Parenthood and others following up on the Congressional referrals. The same week, DaVinci Biosciences admitted to illegally selling fetal body parts from PPFA affiliate Planned Parenthood of Orange & San Bernardino Counties as part of a $7.8 million settlement with the Orange County (California) District Attorney, and the D.A. credited Plaintiffs' undercover video reporting with prompting the successful case. In September 2018, the Department of Health and Human Services terminated its

contracts with Planned Parenthood partner Advanced Bioscience Resources, stating it could not be "sufficiently assured" that ABR's supply complied with the federal law against selling fetal tissue.

18.     In January 2019, the Fifth Circuit United States Court of Appeals dissolved an injunction against the Texas Health and Human Service Commission's ("THHSC's") decision to terminate Medicaid provider agreements with PPFA's Texas regional affiliates based on Plaintiffs' undercover videos. The Fifth Circuit noted that the THHSC's Office of Inspector General "submitted a report from a forensic firm concluding that the video was authentic and not deceptively edited." *Planned Parenthood of Greater Texas Family Planning & Prevention Health Servs., Inc. v. Smith*, 913 F.3d 551, 559, n. 6 (5th Cir.), *reh'g en banc granted sub nom. Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Smith*, 914 F.3d 994 (5th Cir. 2019). The Fifth Circuit thus concluded the district court's statement that the videos had not been authenticated and may have been deceptively edited was "inaccurate[]." *Id.* at 559.

19.     In general, therefore, the Videos generated a tremendous amount of attention and controversy, including: considerable negative publicity for abortion providers that engage in fetal tissue transfers, such as the PPFA network; investigations and criminal referrals by two Congressional committees; the liquidation of criminal fetal tissue business partners of the PPFA network; and reforms to federally-sponsored fetal experimentation programs.

## PPFA Lawsuit

20.     In January 2016, PPFA and several of its affiliates filed a 15-count lawsuit against Daleiden, CMP, and associates, alleging everything from violation of the Racketeering Influenced and Corrupt Organizations (RICO) Act to trespass to invasion of privacy.

21.     PPFA specifically refrained, however, from bringing a defamation claim, which would have addressed the primary issue of whether the Videos were false. PPFA was thus unable to seek damages for harm resulting to its reputation as a result of the videos.

22.     Indeed, PPFA even stipulated that "the words used by [Planned Parenthood] personnel . . . in the video recorded by defendants were spoken by those persons." (*See* Exhibit A, relevant excerpts from *Planned Parenthood et al. v. CMP et al.*, C16-0236-WHO, United States District Court, Northern District of California, Transcript of Jury Trial Proceedings dated November 6, 2019, 7:30 a.m. at 3465:13-1.) Additionally, Planned Parenthood leadership from the Videos gave deposition testimony in the federal lawsuit that the undercover videos recorded their actual statements.

23.     The final jury instructions made this all the more clear, when the district court "emphasized" that the case "is not about the truth of whether [Planned Parenthood] profited from the sale of fetal tissue or otherwise violated the law in securing tissue for those programs. It is not about whether any Plaintiff actually engaged in illegal conduct." (*See* Exhibit B, *Planned Parenthood et al. v. CMP et al.*, United States District Court, Northern District of California, Final Jury Instructions, dated November 12, 2019, at 8.)

24.     PPFA has scrupulously avoided challenging the veracity of these videos, perhaps to avoid putting its fetal harvesting practices on trial.


**PPFA's Defamatory Statements**

25.     In the fall of 2019, PPFA took a different approach to swaying the court of public opinion. While refusing to place the core issue of whether the Videos depicted the truth under judicial scrutiny, PPFA began falsely denying their accuracy outside the courtroom walls.

7

26.    On September 18, 2019, PPFA's Senior Vice President of Communication and Culture Melanie Newman issued a statement to media, published in Rewire News, that Daleiden and CMP "***manufacture[d] a fake*** smear *campaign* against Planned Parenthood."[1] (Emphasis added.)

27.    Similarly, on November 15, 2019, PPFA tweeted from its official Twitter account that Daleiden and associates "***created a false*** smear *campaign* against Planned Parenthood." (Emphasis added.)[2]

28.    Each of these statements is provably false.

29.    Plaintiffs' public media releases of undercover videos accurately reported the words of Planned Parenthood's officials discussing the PPFA network's abortion and fetal tissue harvesting programs. PPFA's stipulation in its civil case against Daleiden acknowledges the words stated by Planned Parenthood officials in the Videos were actually spoken by those persons.

31.    The contents of the Videos are true and accurate, and thus Defendant's statements are provably false.

30.    PPFA published its statements with actual malice.

32.    PPFA's reputation and political standing had been significantly harmed by the accurate depiction of events in the Videos. PPFA thus had reason to be personally biased against and harbor political animosity toward Daleiden, animating its hostility toward Daleiden and CMP. PPFA also made its statements despite knowing that its clinics had received payments priced per

---

[1] Helen Christophi, "Anti-Choice Activist David Daleiden Gets Bad News in Court," Rewire.News, September 18, 2019, https://rewire.news/article/2019/09/18/anti-choice-activist-david-daleiden-gets-bad-news-in-court/.
[2] https://twitter.com/PPFA/status/1195457565930467329.

8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| THE CENTER FOR MEDICAL PROGRESS, a California corporation, and DAVID DALEIDEN, an individual, | ) ) ) ) | |
| Plaintiffs, | ) ) | **Case No.** |
| PLANNED PARENTHOOD FEDERATION OF AMERICA, a New York corporation, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**VERIFIED COMPLAINT AND JURY DEMAND**

Plaintiffs, David Daleiden and The Center for Medical Progress, by and through counsel, complain as follows:

**INTRODUCTION**

1.    For over 20 years, Defendant Planned Parenthood Federation of America ("PPFA"), the largest elective abortion provider in the United States, has permitted and even encouraged its abortion clinics to supply aborted human fetuses, fetal organs, and fetal tissues for research experimentation, frequently in exchange for valuable consideration paid to the clinics. In the summer of 2015, Plaintiffs David Daleiden and the Center for Medical Progress ("CMP") released a series of undercover videos showing high-level Planned Parenthood officials from PPFA and from regional Planned Parenthood offices candidly discussing the PPFA network's questionable practices in their abortion and fetal tissue harvesting programs.

2.    As but one example, in the first video released, PPFA's Senior Director of Medical Services suggested prices "per-specimen" of fetal tissue, and advised that in her Planned Parenthood clinics, "We've been very good at getting heart, lung, liver, because we know, so I'm

1

not gonna crush that part, I'm gonna basically crush below, I'm gonna crush above, and I'm gonna see if I can get it all intact," and described using ultrasound guidance to flip the position of a living fetus to feet-first in order to extract the fetus whole, remarking, "We've been pretty successful with that, I'd say."

3. The Videos focused attention both on PPFA's fetal tissue research programs and on its clinics' relationships with third-party vendors of human fetal tissue, prompting two comprehensive, year-long Congressional investigations. Both Congressional investigations issued criminal referrals to the FBI and U.S. Department of Justice ("DOJ") against PPFA, multiple PPFA regional affiliates, and their business partners for selling fetal tissue against the law. DOJ then launched a criminal investigation into Planned Parenthood and others. And one of the third-party fetal-tissue vendors, DaVinci Biosciences, admitted guilt for illegally selling fetal body parts from PPFA affiliate Planned Parenthood of Orange & San Bernardino Counties in a $7.8 million settlement with the Orange County District Attorney. The D.A. credited Plaintiffs' undercover video reporting with prompting the successful case. In September 2018, the Department of Health and Human Services terminated its contracts with Planned Parenthood partner Advanced Bioscience Resources ("ABR"), stating it could not be "sufficiently assured" that ABR's supply complied with the federal law against selling fetal tissue.

4. When PPFA retaliated against Plaintiffs' reporting by filing a civil lawsuit against them in January 2016 in San Francisco federal court, PPFA specifically omitted a claim for defamation. In sworn deposition testimony, the Planned Parenthood leadership from the Videos repeatedly admitted that the undercover videos recorded their actual statements, and at trial, PPFA agreed to a stipulation that the words used by Planned Parenthood officials on the Videos "were spoken by those persons."

2

5.      Yet, on September 18, 2019 (on the eve of trial in PPFA's lawsuit), PPFA's Senior Vice President of Communication and Culture Melanie Newman falsely issued a statement to media, published in Rewire News, that Daleiden and CMP "manufacture[d] a fake smear campaign against Planned Parenthood." And on November 15, 2019, PPFA falsely tweeted from its official Twitter account that Daleiden and others associated with CMP "created a false smear campaign against Planned Parenthood." In reality, as PPFA and its representatives recorded on the Videos readily admit in other fora, Plaintiffs' videos accurately record Planned Parenthood officials' own shocking words spoken in real life.

6.      Daleiden and CMP therefore bring this action under New York law to be made whole for the substantial reputational, emotional, financial, and other damages they have suffered as a result of PPFA's objectively false assertions about them, and for injunctive relief to prevent ongoing harm from PPFA's false statements.

## PARTIES

7.      Plaintiff David Daleiden is an individual residing in the state of California. He is an investigative journalist who founded CMP to monitor and report on medical ethics and advances.

8.      CMP is a non-profit public benefit corporation whose principal place of business and registered office is in California. CMP comprises a group of citizen journalists dedicated to monitoring and reporting on medical ethics and advances with a special focus on bioethical issues impacting human dignity.

9.      Defendant PPFA is a 501(c)(3) organization headquartered in New York and is the largest provider of elective abortions in the United States. PPFA oversees a network of approximately 59 regional affiliated franchises across the country, all of which are required by

3

PPFA to perform abortions. In 2018, the most recent year for which numbers are available, the PPFA network reported performing 345,672 abortions, which is approximately 40% of the total abortions performed in the United States. PPFA receives taxpayer funding.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction under 42 U.S.C. § 1332, because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) because PPFA's national headquarters are in this district and a substantial part of the events that gave rise to this action's claims occurred in this district.

## GENERAL ALLEGATIONS

### The "Human Capital Project" Videos

12.     In 2013, Daleiden and CMP launched an investigative reporting project, released in 2015 as the "Human Capital Project," to investigate, document, and report on questionable practices involving the trade in aborted fetal tissue and organs. These practices include the sale of fetal tissue for valuable consideration, the modification of abortion procedures to obtain fetal tissue for federally-funded research, partial-birth abortions, and the killing of babies born alive following abortion procedures.

13.     As part of the Human Capital Project, Mr. Daleiden performed undercover investigations of a nature typical in investigative journalism, including attending abortion industry tradeshows under an assumed name and speaking with abortion providers and fetal tissue procurement company executives. Mr. Daleiden's video recorded many such activities in the course of undercover investigation ("the Videos").

4

14.     The Videos truly and accurately memorialized the statements these representatives
made to Daleiden and other CMP investigators during their discussions. Each time Mr. Daleiden
and CMP released a new undercover video in the Human Capital Project series, they published the
full footage of the conversation with the Planned Parenthood representative, alongside a shorter
summary version presenting the most significant parts of the conversation.

## Public Reaction to the "Human Capital Project" Videos

15.     The public's reaction to the Videos resulted in widespread public controversy about
PPFA and its fetal tissue procurement and distribution practices.

16.     As a result of that controversy, Congress began two comprehensive, year-long
investigations, one at the Senate Judiciary Committee and one at the House Energy & Commerce
Committee's Selective Investigative Panel. These two nationwide investigations reviewed tens of
thousands of pages of primary source documents and conducted hundreds of hours of witness
interviews, ultimately issuing dozens of criminal and regulatory referrals for PPFA, its affiliates,
and its business partners in the fetal tissue trade to local, state, and federal law enforcement.

17.     The Videos focused attention both on PPFA's fetal tissue research programs and
on its clinics' relationships with third-party vendors of human fetal tissue, such as DaVinci
Biosciences, LLC and Advanced Bioscience Resources, Inc. ("ABR.") In December 2017, the
DOJ announced it had launched a criminal investigation of Planned Parenthood and others
following up on the Congressional referrals. The same week, DaVinci Biosciences admitted to
illegally selling fetal body parts from PPFA affiliate Planned Parenthood of Orange & San
Bernardino Counties as part of a $7.8 million settlement with the Orange County (California)
District Attorney, and the D.A. credited Plaintiffs' undercover video reporting with prompting the
successful case. In September 2018, the Department of Health and Human Services terminated its

contracts with Planned Parenthood partner Advanced Bioscience Resources, stating it could not be "sufficiently assured" that ABR's supply complied with the federal law against selling fetal tissue.

18.     In January 2019, the Fifth Circuit United States Court of Appeals dissolved an injunction against the Texas Health and Human Service Commission's ("THHSC's") decision to terminate Medicaid provider agreements with PPFA's Texas regional affiliates based on Plaintiffs' undercover videos. The Fifth Circuit noted that the THHSC's Office of Inspector General "submitted a report from a forensic firm concluding that the video was authentic and not deceptively edited." *Planned Parenthood of Greater Texas Family Planning & Prevention Health Servs., Inc. v. Smith*, 913 F.3d 551, 559, n. 6 (5th Cir.), *reh'g en banc granted sub nom. Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Smith*, 914 F.3d 994 (5th Cir. 2019). The Fifth Circuit thus concluded the district court's statement that the videos had not been authenticated and may have been deceptively edited was "inaccurate[]." *Id.* at 559.

19.     In general, therefore, the Videos generated a tremendous amount of attention and controversy, including: considerable negative publicity for abortion providers that engage in fetal tissue transfers, such as the PPFA network; investigations and criminal referrals by two Congressional committees; the liquidation of criminal fetal tissue business partners of the PPFA network; and reforms to federally-sponsored fetal experimentation programs.

### PPFA Lawsuit

20.     In January 2016, PPFA and several of its affiliates filed a 15-count lawsuit against Daleiden, CMP, and associates, alleging everything from violation of the Racketeering Influenced and Corrupt Organizations (RICO) Act to trespass to invasion of privacy.

21.     PPFA specifically refrained, however, from bringing a defamation claim, which would have addressed the primary issue of whether the Videos were false. PPFA was thus unable to seek damages for harm resulting to its reputation as a result of the videos.

22.     Indeed, PPFA even stipulated that "the words used by [Planned Parenthood] personnel . . . in the video recorded by defendants were spoken by those persons." (*See* Exhibit A, relevant excerpts from *Planned Parenthood et al. v. CMP et al.*, C16-0236-WHO, United States District Court, Northern District of California, Transcript of Jury Trial Proceedings dated November 6, 2019, 7:30 a.m. at 3465:13-1.) Additionally, Planned Parenthood leadership from the Videos gave deposition testimony in the federal lawsuit that the undercover videos recorded their actual statements.

23.     The final jury instructions made this all the more clear, when the district court "emphasized" that the case "is not about the truth of whether [Planned Parenthood] profited from the sale of fetal tissue or otherwise violated the law in securing tissue for those programs. It is not about whether any Plaintiff actually engaged in illegal conduct." (*See* Exhibit B, *Planned Parenthood et al. v. CMP et al.*, United States District Court, Northern District of California, Final Jury Instructions, dated November 12, 2019, at 8.)

24.     PPFA has scrupulously avoided challenging the veracity of these videos, perhaps to avoid putting its fetal harvesting practices on trial.

**PPFA's Defamatory Statements**

25.     In the fall of 2019, PPFA took a different approach to swaying the court of public opinion. While refusing to place the core issue of whether the Videos depicted the truth under judicial scrutiny, PPFA began falsely denying their accuracy outside the courtroom walls.

7

26.     On September 18, 2019, PPFA's Senior Vice President of Communication and Culture Melanie Newman issued a statement to media, published in Rewire News, that Daleiden and CMP "***manufacture[d] a fake*** smear *campaign* against Planned Parenthood."[1] (Emphasis added.)

27.     Similarly, on November 15, 2019, PPFA tweeted from its official Twitter account that Daleiden and associates "***created a false*** smear *campaign* against Planned Parenthood." (Emphasis added.)[2]

28.     Each of these statements is provably false.

29.     Plaintiffs' public media releases of undercover videos accurately reported the words of Planned Parenthood's officials discussing the PPFA network's abortion and fetal tissue harvesting programs. PPFA's stipulation in its civil case against Daleiden acknowledges the words stated by Planned Parenthood officials in the Videos were actually spoken by those persons.

31.     The contents of the Videos are true and accurate, and thus Defendant's statements are provably false.

30.     PPFA published its statements with actual malice.

32.     PPFA's reputation and political standing had been significantly harmed by the accurate depiction of events in the Videos. PPFA thus had reason to be personally biased against and harbor political animosity toward Daleiden, animating its hostility toward Daleiden and CMP. PPFA also made its statements despite knowing that its clinics had received payments priced per

---

[1] Helen Christophi, "Anti-Choice Activist David Daleiden Gets Bad News in Court," Rewire.News, September 18, 2019, https://rewire.news/article/2019/09/18/anti-choice-activist-david-daleiden-gets-bad-news-in-court/.
[2] https://twitter.com/PPFA/status/1195457565930467329.

fetal specimen, and that its clinicians had changed the way they performed abortions in order to obtain more usable fetal specimens.

33. Alternatively, PPFA made its defamatory statements in reckless disregard of the truth given the clear evidence on the Videos that Planned Parenthood clinics received payments priced per fetal specimen, and Planned Parenthood clinicians changed the way they did abortions in order to obtain more usable fetal specimens.

34.    Since PPFA's blatantly and provably false statements were made with actual malice, they have presumptively caused Plaintiffs actual damages, including reputational harm, personal humiliation, emotional distress, anxiety, and impairment of quality of life.

### COUNT I

### Defamation *Per Se*

35.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 49 above.

36.    PPFA, by and through Senior Vice President of Communication and Culture Melanie Newman and PPFA's official Twitter account, published the statements set forth in paragraphs 25 and 26 above directly to third parties, including to Rewire News and its readership, and to the widespread audience of its public Twitter account.

37.    The statements directly concerned Daleiden and CMP. The statement to Rewire News, as recounted in paragraph 25 above, specifically occurred in the following excerpt: "Melanie Newman, a spokesperson for [PPFA], said in a statement that *Daleiden* and Merritt should face the legal consequences of their 'multiyear illegal effort to manufacture a fake smear campaign against Planned Parenthood." (Emphasis added.) To the extent Daleiden founded and conducted his undercover investigation through CMP, this statement also clearly concerned CMP. PPFA's Twitter statement also concerned both Plaintiffs, specifically stating that "the so-called

9

'Center for Medical Progress,' David Daleiden, and others [] created a false smear campaign against Planned Parenthood."

38.    For the reasons described above, a reasonable reader would have understood the challenged statements to mean that Plaintiffs had "created" or "manufactured" video footage that was "false" or "fake," in an effort to harm ("smear") the Defendant. The statements constitute accusations of concrete, wrongful conduct, and thus are not abstract statements of opinion.

39.    The statements are defamatory *per se*, because they tend to injure Plaintiffs in their business, trade, or profession, and this tendency is apparent from the face of the statements. Specifically, Plaintiffs are in the business of truthful and accurate investigatory reporting by use of authentic undercover video footage, and the statements accused them of false and deceitful reporting and producing inauthentic video footage.

40.    The statements were published without privilege.

41.    The statements were published with actual malice, since at the time of their publication PPFA had reason to be personally biased and politically motivated against Daleiden. PPFA also made the statements despite multiple sworn admissions from Planned Parenthood leadership that the undercover videos recorded their actual statements, and despite PPFA's prior judicial stipulation that the words used by Planned Parenthood officials on the Videos "were spoken by those persons." Additionally, PPFA made the statements despite knowing that its clinics had received payments priced per fetal specimen, and that its clinicians had changed the way they performed abortions in order to obtain more usable fetal specimens.

42.    For the reasons described above, the statements presumptively caused Daleiden actual damages.

10

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment against the Defendant and the following relief:

A.     For judgment in favor of Plaintiffs and against Defendant;

B.     For actual and punitive damages in an amount exceeding $75,000, including damages necessary to make Plaintiffs whole for the presumptive impairment to their reputation, personal humiliation, mental anguish and suffering; and punitive and exemplary damages, in an amount necessary to punish PPFA for its malicious conduct toward Plaintiffs;

C.     For an injunction ordering PPFA to retract and remove all false statements concerning CMP or Daleiden contained on its Twitter account or stated to Rewire News, and to issue a publicly accessible correction of these statements.

D.     For pre-judgment and post-judgment interest.

E.     For costs of the suit incurred herein;

F.     For such other and further relief as the court deems just and proper.

THE PLAINTIFFS DEMAND A JURY TRIAL.

Dated this Day 17, September, 2020

Respectfully submitted,

Christopher A. Ferrara (Bar No. CF-7123)
NY Reg. No. 1004407
148-29 Cross Island Parkway
Whitestone, Queens, New York 11357
Tel: (718) 357-1040
cferrara@thomasmoresociety.org
Special Counsel to the Thomas More Society

*Attorney for Plaintiffs*

11

Thomas Brejcha, *pro hac vice* pending
(IL Bar No. 0288446)
Peter Breen, *pro hac vice* pending
(IL Bar No. 6271981)
Michael McHale, *pro hac vice* pending
(NE Bar No. 24949)
THOMAS MORE SOCIETY
309 W. Washington St., #1250
Chicago, IL 60606
Tel: (312) 782-1680
Fax: (312) 782-1887
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org
mmchale@thomasmoresociety.org

*Attorneys for Plaintiffs*


Harmeet K. Dhillon
(NY Reg. No. 2667350)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
Tel: 415-433-1700
Fax: 415-520-6593
harmeet@dhillonlaw.com

*Attorney for Plaintiff*

Ronald D. Coleman
(NY Reg. No. 2288835)
DHILLON LAW GROUP INC.
256 5th Ave., 4th Floor
New York, NY 10001
Tel: 347-996-4840
Fax: 646-358-8082
rcoleman@dhillonlaw.com

*Attorney for Plaintiff*

12

VERIFICATION

I, DAVID DALEIDEN, individually and on behalf of the THE CENTER FOR MEDICAL
PROGRESS, INC. hereby affirm that the information contained in the above VERIFIED
COMPLAINT AND JURY DEMAND is true and accurate to the best of my information,
knowledge, and belief.


David Daleiden, individually and
on behalf of the Center for Medical Progress, Inc.

13

# Exhibit A

Volume 18

Pages 3443 - 3565

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK, JUDGE

PLANNED PARENTHOOD FEDERATION OF     )
AMERICA, INC., et al.,               )
                                     )
            Plaintiffs,              )
  vs.                                ) No. C 16-0236 WHO
                                     )
CENTER FOR MEDICAL PROGRESS,         )
et al.,                              ) San Francisco, California
                                     ) Wednesday
            Defendant.               ) November 6, 2019
_____) 7:30 a.m.

### TRANSCRIPT OF JURY TRIAL PROCEEDINGS

**APPEARANCES:**

**For Plaintiffs:**

                    ROGERS JOSEPH O'DONNELL
                    311 California Street
                    10th Floor
                    San Francisco, California  94104
                BY: **AMY LYNNE BOMSE, ESQ.**


                    ARNOLD AND PORTER KAYE SCHOLER LLP
                    Three Embarcadero Center
                    10th Floor
                    San Francisco, California  94111
                BY: **SHARON D. MAYO, ESQ.**
                    **JEREMY KAMRAS, ESQ.**
                    **STEVEN L. MAYER, ESQ.**


        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Debra L. Pas, CSR 11916, CRR, RMR
              Belle Ball, CSR 8785, CRR, RMR
              Official Reporters - US District Court

**PROCEEDINGS**

1   The next inference:  Annamarie Bettisworth Davin's goal in

2   working for CMP was to harm Planned Parenthood.

3   Next inference:  Annamarie Bettisworth Davin used a false

4   identity to gain entry to and videotape at a NAF conference

5   that required identification.

6   The final inference:  Annamarie Bettisworth Davin provided

7   false information, including the BioMax brochure, to gain the

8   trust of Planned Parenthood employees, to further her goal of

9   ending abortion.

10   So those are the inferences that you may take with respect

11   to those -- but are not required to take, with respect to those

12   three witnesses.

13   In addition, on a different subject, the parties have

14   agreed on a stipulation, which is that the words used by

15   plaintiffs' personnel and the defendants in videos recorded by

16   the defendants were spoken by those persons.

17   And with that, who is the next witness, Mr. LiMandri?

18   **MR. LIMANDRI:**  At this time, Your Honor, the defense

19   would like to call Mr. Paul Zimmer to the stand, please.

20   **THE COURT:**  Great.

21   Come on up, Mr. Zimmer.

22   **PAUL ZIMMER**,

23   called as a witness for the Defendants, having been duly sworn,

24   testified as follows:

25   **THE CLERK:**  Be seated.

### CERTIFICATE OF REPORTER

We certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Belle Ball, CSR 8785, CRR, RMR, RPR

Wednesday, November 6, 2019

# EXHIBIT B

Case 1:20-cv-07670-CM    Document 4    Filed 09/18/20    Page 47 of 48
Case 1:20-cv-07670   Document 1   Filed 09/17/20   Page 19 of 20

Case 3:16-cv-00236-WHO   Document 1006   Filed 11/12/19   Page 1 of 105

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PLANNED PARENTHOOD
FEDERATION OF AMERICA, INC., et al.,

Plaintiffs,

v.

CENTER FOR MEDICAL PROGRESS, et
al.,

Defendants.

Case No. 16-cv-00236-WHO

**FINAL JURY INSTRUCTIONS**

TABLE OF CONTENTS

I.    INTRODUCTORY AND MISCELLANEOUS INSTRUCTIONS.........................................7

      1.    Duty of Jury - Instructions ...................................................................................7

      2.    Matters Not to be Decided by the Jury .................................................................8

      3.    Burden of Proof – Preponderance of Evidence.....................................................9

      4.    Burden of Proof – Clear and Convincing Evidence ...........................................10

      5.    Two or More Parties – Different Legal Rights ...................................................11

      6.    What is Evidence .................................................................................................12

      7.    What is Not Evidence .........................................................................................13

      8.    Evidence for Limited Purpose.............................................................................14

      9.    Direct and Circumstantial Evidence ...................................................................15

      10.   Ruling on Objections ...........................................................................................16

### 2.    Matters Not to be Decided by the Jury

The claims and defenses in this case concern the strategies chosen and employed by the Defendants, and I limited the evidence accordingly. I need to emphasize what this case is not about. It is not about the truth of whether Plaintiffs profited from the sale of fetal tissue or otherwise violated the law in securing tissue for those programs. It is not about whether any Plaintiff actually engaged in illegal conduct. It is not about whether abortion is good or bad. Those issues are a matter of dispute between the parties in the world outside this courtroom. In this courtroom your job is to consider the evidence related to the claims and defenses in this case in accordance with the instructions that I give you.