UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE CENTER FOR MEDICAL PROGRESS and
DAVID DALEIDEN,

                              Plaintiffs,

    -against-                                      No. 20 Civ. 7670 (CM)

PLANNED PARENTHOOD FEDERATION OF
AMERICA

                              Defendant.

---

**MEMORANDUM AND ORDER DISMISSING PLAINTIFFS' COMPLAINT**

McMahon, J.:

Plaintiffs, the Center for Medical Progress ("CMP") and David Daleiden, bring this action against Planned Parenthood Federation of America ("PPFA"). Between 2016 and 2019, the parties were embroiled in a lawsuit – in which PPFA ultimately prevailed – after Plaintiffs infiltrated conferences using false identities, surreptitiously recorded conversations with abortion providers using hidden cameras, and released portions of those recordings online. Daleiden and an associate presently face criminal charges for the same conduct.

In reaction to rulings in those court cases, PPFA released two statements that were critical of Plaintiffs. Plaintiffs now allege that discrete portions of those statements are defamatory.

PPFA moves to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). PPFA's motion is GRANTED.

## BACKGROUND

**I.**    **Factual Background**

   A. *PPFA's Lawsuit Against Plaintiffs*

   Plaintiffs are active in the anti-abortion movement.

1

In 2013, Plaintiffs embarked on an "investigative reporting project," in connection with their anti-abortion activities. Daleiden and several others attended abortion industry conferences using assumed names and fake IDs, and secretly recorded conversations with abortion providers. (Compl. ¶ 13.) Plaintiffs released these videos, including "shorter summary version[s]" in 2015 as part of their "Human Capital Project." (*Id.* ¶¶ 12, 14.) The point of the project was to assert that PPFA was involved in the illegal sale of fetal tissue – a claim that has been widely debunked.[1]

The videos generated a tremendous amount of attention, controversy, and litigation.

In January 2016, PPFA and several affiliates of Planned Parenthood filed a fifteen-count lawsuit in the Northern District of California against several defendants, including CMP and Daleiden, alleging, among other things, fraud, trespass, invasion of privacy, and civil RICO violations. ("California Civil Case"; Compl. ¶ 20.) PPFA did not assert a defamation counterclaim or bring a defamation claim against the defendants at that time. (*Id.* ¶ 21.)

PPFA prevailed on all its claims, and the jury awarded the plaintiffs more than $2 million in damages, including $870,000 in punitive damages.[2]

Daleiden and his associate, Sandra Merritt, are also facing criminal charges in San Francisco Superior Court for illegal recording, aided by use of false identities, identification documents, and a fictitious company. ("California Criminal Case"; *see* Defs. Mot. Exs. 4, 5.) Daleiden filed a motion to dismiss nine counts against him, which was denied on July 28, 2020. The criminal case is expected to go to trial sometime during 2021.

---

[1] *See* https://oversight.house.gov/planned-parenthood-fact-v-fiction.
[2] The Court may take judicial notice of court filings and other matters of public record, including newspaper articles and media interviews, without converting a motion to dismiss into a motion for summary judgment. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); Fed. R. Evid. 201(c)(2).

B. *The Allegedly Defamatory Statements*

On September 18, 2019, the San Francisco Superior Court denied Daleiden's motion to quash a search warrant that was executed on his apartment in connection with the California Criminal Case. That day, PPFA's Senior Vice President of Communications and Culture, Melanie Newman, issued a public statement, in which she said that Daleiden and Merritt should face the legal consequences of their "multiyear illegal effort to manufacture a fake smear campaign against Planned Parenthood." (Compl. ¶ 26, "First Challenged Statement.")

On November 15, 2019, after the jury found in favor of PPFA in the California Civil Case, PPFA posted to its Twitter feed, "We're thrilled with today's verdict, which found that the so-called 'Center for Medical Progress,' David Daleiden, and others who created a false smear campaign against Planned Parenthood broke multiple state and federal laws." (Compl. ¶ 27, "Second Challenged Statement.")

Plaintiffs allege that the similar phrases "manufacture a fake smear campaign" and "created a false smear campaign" are defamatory. They allege that the videos they recorded and released are true, and that "a reasonable reader would have understood the statements to mean that Plaintiffs had 'created' or 'manufactured' video footage that was 'false' or 'fake' in an effort to harm ('smear') Defendant." (Compl. ¶ 38.) Plaintiffs allege further that these statements are defamatory *per se* because they tend to harm them in their claimed profession of "truthful and accurate investigative reporting by use of authentic video footage, and the statements accused them of false and deceitful reporting and producing inauthentic video footage." (Compl. ¶ 39.)

C. *The Parties*

Plaintiff CMP is a non-profit public benefit corporation that "comprises a group of citizen journalists dedicated to monitoring and reporting medical ethics and advances with a special focus

3

on bioethical issues impacting human dignity." (Compl. ¶ 8.) It is an active anti-abortion group. CMP has its principal place of business and registered office in California.

Plaintiff Daleiden claims to be "an investigative journalist who founded CMP to monitor and report on medical ethics and advances." (Compl. ¶ 7.) Daleiden resides in California.

Defendant PPFA is a 501(c)(3) nonprofit organization headquartered in New York. (Compl. ¶ 9.)

## DISCUSSION

### II.  Legal Standard

To survive a motion to dismiss made pursuant to either Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating whether the Complaint meets this standard, the Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court is not, however, obligated to accept as true legal conclusions couched as factual allegations. *Rolon v. Hennenman*, 517 F.3d 140, 148–49 (2d Cir. 2008); *see also Iqbal*, 556 U.S. at 678. Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). The court may consider the full text of

4

documents that are cited in, incorporated by reference in, or "integral" to the complaint. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).

### III.   Analysis

Plaintiffs assert a defamation *per se* claim against Defendants in connection with the two challenged statements: (1) the quote from Newman, in the September 18, 2019 *Rewire* article (First Challenged Statement), and (2) PPFA's November 15, 2019 Tweet (Second Challenged Statement).

Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander. *See Morrison v. Nat'l Broad. Co.*, 227 N.E.2d 572, 574 (N.Y. 1967). The law of defamation serves to protect an individual's right to one's reputation. *See Gertz v. Welch*, 418 U.S. 323, 343–45 (1974).

However, courts have held that, "Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Adelson v. Harris*, 973 F. Supp.2d 467, 481 (S.D.N.Y. 2013), (internal quotations and citations omitted), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

To establish libel under New York law, a plaintiff must prove five elements: "(1) a written defamatory factual statement [of and] concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014).  Falsity is a necessary element of a defamation cause of action and because "only 'facts' are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action." *Rosner v. Amazon.com*, 18 N.Y.S.3d 155, 157 (2d Dep't 2015) (internal quotations and citations omitted).

"Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance." *Celle v. Filipino Rep. Enters., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).

Defendants moves to dismiss the Complaint on grounds that (1) the Challenged Statements are nonactionable, (2) Plaintiffs are libel-proof, and (3) Plaintiffs failed to plead defamation *per se*.

A. *The Challenged Statements Are Nonactionable*

Defendant asserts that the Challenged Statements are nonactionable because they are (1) privileged under Section 74 of the New York Civil Rights Law, (2) nonactionable statements of opinion, and (3) substantially true. The first and third arguments are correct; the Court need go no further in order to dismiss the complaint.

1. The Challenged Statements Are Substantially True

Plaintiffs have failed to state a claim for defamation for the simple reason that neither of the Challenged Statements is false – a necessary element of any defamation claim.

"If an allegedly defamatory statement is 'substantially true,' a claim of libel is legally insufficient and . . . should be dismissed." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (quotations and citations omitted).  A plaintiff must therefore plead "facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

"[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id*. (quoting *Franklin v. Daily Holdings, Inc.*, 135 N.Y.S.3d 6, 12 (1st Dep't 2015).  "When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." *Id.* (quoting *Fleckstein v. Friedman*, 266 N.Y. 19, 23 (N.Y. 1934)).  Courts should consider "the entire publication, as

well as the circumstances of its issuance," to interpret the meaning of the challenged phrase. *Id.* at 249 (quoting *Silsdorf v. Levine*, 59 N.Y.S.2d 882 (N.Y. 1983)).

Here, Plaintiffs affirmatively allege that Daleiden and Merritt established a fictitious company and attended abortion industry conferences under assumed names and with false documentation, where they secretly record conversations with abortion providers using hidden cameras. (Compl. ¶ 13 & Ex. A; Def. Exs. 4, 5.)  Plaintiffs also allege that Daleiden did this as the founder of CMP, an anti-abortion organization whose mission is to "report on questionable practices involving the trade in aborted fetal tissue and organs . . . [including] the modification of abortion procedures to obtain fetal tissue for federally-funded research, partial-birth abortions, and the killing of babies born alive following abortion procedures." (Compl. ¶ 12) In other words, plaintiffs affirmatively allege that their mission is to condemn publicly practices that Plaintiffs attribute – in some instances, erroneously, as with the claim of illegally selling fetal tissue – to PPFA.

Plaintiffs allege that they released a series of videos to the public as part of their years-long "Human Capital Project."  They admit that these included versions that spliced various statements that were not contiguous, took statements out of context and presented what Plaintiffs describe as "the most significant parts of the conversation[s]." (Compl. ¶ 14.)  In other words, Plaintiffs admit in their own pleading that they doctored actual statements so that they did not necessarily convey the speaker's full message. Plaintiffs allege that these doctored and misleading videos generated a tremendous amount of attention and controversy, and led to both negative press coverage about PPFA and Congressional and Department of Justice investigations into PPFA. (Compl. ¶¶ 16, 19.)

It is undisputed that the jury in the California Civil Case found Daleiden and CMP liable for fraud (among other things) in connection with the very activities that to which Plaintiffs admit

7

in the complaint filed in this Court. And it is undisputed that the California jury awarded PPFA over $2 million, including $870,000 in punitive damages, for harm that it suffered as a result of Plaintiffs' "Project" and the videos it released.  It is perfectly clear to this Court that Plaintiffs' efforts to harm PPFA by re-publicizing this same "work" of the "Human Capital Project" continue to this day – including by filing this patently frivolous lawsuit.

Even drawing all inferences in favor of Plaintiffs, it is clear to the Court that no reasonable factfinder could conclude that the Challenged Statements could have no effect on the mind of the reader different than the effect caused by what Plaintiffs themselves plead. The clear import of both the allegations of the complaint and the allegedly defamatory statements is that Daleiden and Merritt devised a scheme in which they repeatedly employed tactics that a jury has found to be fraudulent and deceptive in order to obtain and disseminate information – at least some of which is untrue – in order to harm the reputation of Planned Parenthood as a leader in women's health care, as well as to interfere with its ability to provide such health care, including legal abortion services. The phrase "false smear campaign," which is alleged to be defamatory, perfectly encapsulates what the Plaintiffs did.  It is, therefore, substantially true and completely non-defamatory.

Plaintiffs contend that the words "false smear campaign" are provably false because the Human Capital Project videos contained only true and accurate information of actual PPFA practices, based on real conversations that took place.  They argue that as a result, the videos can neither be classified as "manufactured" or "false."

This argument is a red herring.  As Plaintiffs themselves acknowledge, "Context is key." *Jacobus v. Trump*, 55 Misc. 3d 470, 475-76 (Sup. Ct., N.Y. Cty. 2017).  The Challenged Statements do not even mention Plaintiffs' *videos,* let alone describe them as "manufactured" or

"false" – or even misleading. Both the *Rewire* article and the Twitter thread in which the Challenged Statements appear are replete with examples of Daleiden and Merritt's fraudulent and deceitful behavior (including establishing a fictitious fetal tissue procurement company, creating false identities, misrepresenting their reasons for attending the abortion industry conferences, and secretly recording conversations). The *Rewire* article (which is not alleged to have been written by PPFA) describes Plaintiffs actions as a "coordinated [] smear campaign against abortion care providers with Republican lawmakers and operatives." In that context, PPFA's statement can only be seen as true.

Plaintiffs also attempt to draw a distinction between "smear campaign," – the language that Defendants use and that Plaintiffs challenge as defamatory – and "campaign to smear" – which is how the author of the *Rewire* article described their activities. They assert that the dictionary defines "smear campaign" as "a plan to discredit a public figure by making *false* allegations," whereas "smear" is defined as "an attempt to harm someone's reputation by publicly accusing them of something that is . . *unlikely to be true*." (Pls. Br. at 19.) And they assert that only "smear campaign" "unambiguously and unmistakably accuse[s] Plaintiffs of lying to the Public."

This is precisely the sort of "shaded distinction" that the law forbids. If "campaign to smear" is not defamatory – and Plaintiffs concede that it is not (Pls. Br., dkt. 21 at 18-19) – then neither is "smear campaign."

The Challenged Statements are, therefore, substantially true. The plaintiffs did indeed engage in a campaign to smear – impugn the reputation of – PPFA. This is not simply the opinion of the Court; a California jury so found. The Challenged Statements are thus not capable of defamatory construction, and Plaintiffs' claim for defamation must be dismissed.

2. The Challenged Statements Are Privileged Under New York Civil Rights Law § 74

If there were any doubt on that score, both Challenged Statements are privileged under Section 74 of the New York Civil Rights Law.

A plaintiff cannot prevail on a defamation claim where the statements complained of are privileged under state law. *Zappin v. NYP Holdings, Inc.*, No. 16 Civ. 8838 (KPF), 2018 WL 1474414, at *5 (S.D.N.Y. Mar. 26, 2018), *aff'd*, 769 F. App'x 5 (2d Cir. 2019). One such privilege is codified at § 74 of the New York Civil Rights Law. It provides:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

N.Y. Civ. Rights Law § 74. The New York legislature enacted this statute in order to avoid stifling "an active, thriving, and untrammeled press" and to ensure that the press receive "broad protection." *Idema v. Wagner*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (citation omitted), *aff'd*, 29 F. App'x 676 (2d Cir. 2002).

Under § 74, a report of an official proceeding that is "fair and true" is protected by an "absolute privilege," and this privilege is "not defeated by the presence of malice or bad faith." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (internal quotation marks and citations omitted). The statute applies to reports of "any judicial proceeding, legislative proceeding, or other official proceeding." *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 214 (N.D.N.Y. 2014). "The protections of section 74 extend to pleadings, transcripts, live proceedings and the release by the parties of background material regarding their positions in the case." *Riel v. Morgan Stanley*, No. 06 CV 524(TPG), 2007 WL 541955, at *10 (S.D.N.Y. Feb. 16, 2007) (internal citations omitted). The protections of Section 74 also extend to reports of judicial proceedings that

are mixed with commentary or opinion. *Briarcliff Loge Hotel v. Citizen-Sentinel Publishers*, 260 N.Y. 106, 118-19 (N.Y. 1932). Courts look to the context of the statements in order to determine whether a reasonable observer would find that they constitute reports of a proceeding. *See Gonzalez v. Gray*, 69 F. Supp. 2d 561, 570 (S.D.N.Y. 1999).

The privilege requires that the "substance of the article be substantially accurate." *Holy Spirit Ass'n*, 399 N.E.2d 1185, 1187 (N.Y. 1979). A "substantially accurate" publication is one that, "despite minor inaccuracies, does not produce a different effect on a reader than would a report containing the precise truth." *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005). The language used "should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n*, 49 N.Y.2d at 68. "Nor should a fair report which is not misleading, composed and phrased in good faith . . . be thereafter parsed and dissected on the basis of precise denotative meanings which may literally, although not contextually, be ascribed to the words." *Id.*

Applying these principles to the present case, it is abundantly clear that the Challenged Statements arose in communications that were (1) reporting on judicial proceedings, and (2) are "fair and true report[s]" of those proceedings.

The First Challenged Statement appears in a September 18, 2019 article published online by the *Rewire News Group*. It is entitled "Anti-Choice Activist David Daleiden Gets Bad News in Court." The first paragraph of the article reads, "A California judge on Tuesday ruled that anti-choice activist David Daleiden broke the law when he surreptitiously taped private conversations with abortion providers as part of a campaign to smear Planned Parenthood." The article goes on to describe the California judge's ruling denying Daleiden's motion to quash a search warrant that was executed on his apartment in connection with the case.

Toward the end of the article, Newman, a PPFA spokesperson, is credited as stating that "Daleiden and Merritt should face the legal consequences of their 'multiyear illegal effort to manufacture a fake smear campaign against Planned Parenthood.'" She goes on to say, "They broke the law to try and Prevent Planned Parenthood from serving patients who depend on us and to advance their goal of banning safe, legal abortion in this country. We're looking forward to justice being served."

Any reasonable reader would understand that the *Rewire* article was reporting on the California Criminal Case, and that the First Challenged Statement, which appeared in that article, was a comment on those proceedings.

The Second Challenged Statement is a portion of a Tweet that PPFA posted to its Twitter feed on November 5, 2019. The Tweet included a link to a November 15, 2019, article, published in *Courthouse News Service,* entitled, "Jury Finds Abortion Foes Harmed Planned Parenthood, Awards Over $2 Million." The full text of the Tweet is: "We're thrilled with today's verdict, which found that the so-called 'Center for Medical Progress, David Daleiden, and others who created a false smear campaign against Planned Parenthood broke multiple state & federal laws."

As was true with respect to the *Rewire* article, any reasonable reader would know that PPFA's Tweet was a response to the result in the California Civil Case. The Tweet explicitly refers to the jury's verdict and attaches an article with a headline that also explicitly references the jury verdict. The thread includes other Tweets that reference and comment on the proceedings.

Plaintiffs actually do not contest that the articles and statements reported on judicial proceedings. They argue instead that the protections of Section 74 are inapplicable to the Challenged Statements because Defendants' characterization of the conduct of Daleiden and others as "manufactur[ing] a false smear campaign" is neither a fair nor true report of (1) the jury's verdict

12

or the underlying allegations in the California Civil Case, or (2) the charges in the California Criminal Case. These arguments are, in a word, ridiculous.

The Second Challenged Statement is as "fair and true" as it gets. The jury in the California Civil Case found defendants liable to PPFA for conduct that can unquestionably be characterized as a "false smear campaign." That phrase runs throughout the public record in the California Civil Case. The complaint, for example, alleged that the Human Capital Project was part of a "long-planned conspiracy to demonize Planned Parenthood" and a "fraudulent smear campaign to malign Planned Parenthood and to mislead the public." (*Planned Parenthood Federation of America, Inc. et al v. Center for Medical Progress et al*, 3:16-cv-00236-WHO, Dkt. No. 1 at 35.) In closing arguments, PPFA's counsel argued that the case was "rooted in lies and misrepresentations" and that the defendants' plan "was about using any means, including illegal means, to destroy Planned Parenthood." (Def. Ex. 1.) The challenged language clearly draws from multiple court records, and thus falls under the ambit of Section 74.

Moreover, Defendants' characterization of the verdict accurately reflects the jury's finding that the California Defendants perpetuated a fraud that was designed to (and did) result in substantial harm to PPFA and its affiliates. As has already been discussed, this statement is "substantially true," in that it is not likely to produce a different effect on a reader than would a report outlining in detail the precise allegation against Daleiden and CMP (*see supra* pp. 7-9).

The First Challenged Statement is not a verbatim recitation of the criminal charges in the California Criminal Case, but a statement "need not be a verbatim report" to qualify for protection under Section 74. *Leder v. Feldman*, 569 N.Y.S.2d 702, 703 (1st Dep't, 1991). When Newman's comment is viewed in the context of the *Rewire* article, it is plainly part of a substantially (indeed, to this Court's reading, entirely) accurate story written by a news agency about the criminal case

brought against Daleiden and Merritt. The State of California charged Daleiden and Merritt with fifteen counts of eavesdropping/recording confidential communications and conspiracy over a period of two years. (Def. Ex. 4.) The overt acts listed in the indictment include the steps Daleiden and Merritt took to create false identities in order to infiltrate the abortion industry conferences, where they secretly recorded conversations in violation of California law. (*Id.*) The article and the portion of Newman's statement that is not challenged as libelous accurately reflect these allegations. Indeed, the article reports on the criminal proceedings in detail. The First Challenged Statement – "manufactured a fake smear campaign" – when read in this context, is best read as "background to the misconduct attributed to [Plaintiffs in the California Criminal Case] rather than a separate and independently defamatory accusation." *Ford v. Levinson*, 454 N.Y.S.2d 846, 848 (1st Dep't 1982). That is enough for the statement to come within the statutory privilege afforded to a fair and true report of a judicial proceeding. *Id.*; *see also Gonzalez v. Gray*, 69 F. Supp. 2d 561, 570 (S.D.N.Y. 1999).

In short, neither statement, read in context, suggests conduct more serious than the conduct alleged in the underlying court cases. The Challenged Statements are thus substantially accurate and privileged under Section 74.

Plaintiffs make several arguments about why the statements do not qualify for the privilege afforded to fair and true reports under Section 74. None is persuasive.

Plaintiffs contend that the Challenged Statements are not substantially accurate because they accuse Daleiden of fabricating evidence, a crime with which he was never charged. But they do no such thing. Neither statement accuses Daleiden of committing any crime. Nothing about the phrases "manufactured a fake smear campaign" and "created a false smear campaign" says anything whatsoever about evidence, fabricated or otherwise. Particularly when read in context

of the Twitter thread and *Rewire* article, no reasonable reader would interpret either statement in the way that Plaintiffs now assert.

Plaintiffs' reliance on *Singer v. Steidley*, No. 13-cv-72-GKF-TLW, 2013 WL 6183845 (N.D. Okla. Nov. 26, 2013), for a fairly narrow interpretation of the word "manufactured" is misplaced. There, the Court used an "alternate definition" of "manufacture": "to invent, fabricate <known to *manufacture* evidence>." *Id.* at *5 (emphasis and brackets in original) (quoting Merriam-Webster Online Dictionary). Plaintiffs adopt this definition and insist that because they did not literally "manufacture evidence," Defendant's use of the term "manufacture" was not fair and true.

In *Singer*, a police investigator sued the district attorney for allegedly manufacturing evidence showing that he (Singer) had lied in sworn statements concerning a criminal investigation 18 months earlier. In addition to his various constitutional claims, Singer asserted a claim for defamation based on his allegation that the district attorney had disclosed the manufactured evidence to the police department, the court, the defense attorney, and a newspaper. The defendants moved to dismiss the defamation claim on grounds that Singer failed to allege the publication of any false material. But the court, citing the above definition of "manufacture," held that Singer had plausibly alleged falsity based on his allegation that the damning evidence was "manufactured."

*Singer* is inapposite. No party in *Singer* alleged that the term "manufactured" was defamatory, and the court explicitly cited to an "alternate definition" of the term. Plaintiffs here cannot cherry-pick one of several definitions of a word, take the word entirely out of context, and claim that such definition precludes a finding that the Challenged Statements were substantially

accurate. That is precisely the sort of lexicographic dissection that the law cautions against. *See Holy Spirit Ass'n*, 49 N.Y.2d at 68.

Plaintiffs' other argument – that the First Challenged Statement is not privileged because it was given "on the eve of trial" and therefore did not report on a judicial proceeding – fares no better. There is no requirement in Section 74 that the report be of a trial, or that the statement can only be fair if it is uttered at any particular point in the lawsuit, or that matter must have concluded. The law is clear that the protections of Section 74 are quite broad and "extend to pleadings, transcripts, live proceedings and the release by the parties of background material regarding their positions in the case." *Riel v. Morgan Stanley*, No. 06 CV 524(TPG), 2007 WL 541955, at *10 (S.D.N.Y. Feb. 16, 2007). No matter at what stage, the California Civil and Criminal Cases both unquestionably qualify as judicial proceedings.

Because the Court has found two independent grounds on which to dismiss Plaintiffs' claim for defamation, it is not necessary to address Defendant's other proposed grounds for dismissal: (1) the Challenged Statements are nonactionable statements of opinion, (2) Plaintiffs are libel-proof, and (3) Plaintiffs have not adequately pled defamation *per se*.

## IV. Attorney's Fees And Costs Under New York's Anti-SLAPP Statute

In a single sentence in the middle of its brief, Defendant asserts that it is entitled to recover its attorney's fees and costs under New York's recently amended anti-SLAPP statute, on grounds that Plaintiffs' claim lacks a substantial basis in the law. While PPFA does not affirmatively seek attorney's fees in the context of its motion to dismiss, it offers to brief the question for the court.

In 1992, New York enacted anti-SLAPP legislation "aimed at broadening the protection of citizens facing litigation arising from their public petition and participation." *Mable Assets, LLC v. Rachmanov*, No. 2018-04592, 2021 WL 1112893, at *1 (N.Y. App. Div., 2d Dep't, Mar. 24, 2021) (citing L. 1992, ch. 767, § 1). SLAPP lawsuits "are characterized as having little legal merit

but are filed nonetheless to burden opponents with legal defense costs and the threat of liability and to discourage those who might wish to speak out in the future." *Id.*

In November 10, 2020, the New York Legislature amended New York's Civil Rights Law and the New York Civil Practice Law and Rules to broaden the scope of the law and provide greater protections to defendants facing SLAPP suits.[3] *See* N.Y. Civil Rights Law §§ 70-a & 76-a; N.Y. C.P.L.R. 3211(g) & 3212(h). Among other things, the amendments expanded the definition of an "action involving public petition and participation," to include a claim based upon:

> (1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.

N.Y. Civil Rights Law § 76-a(1)(a). The law also states that the term "public interest" is to "be construed broadly, and shall mean any subject other than a purely private matter." Id. § 76-a(1)(d).

The present case clearly falls within the scope of the newly amended anti-SLAPP law. Twitter and *Rewire News* – where the Challenged Statements were published – are both open to the public. Both statements were made in connection with civil and criminal actions against Daleiden, Merritt, and CMP, which are issues of public interest.

In New York state courts, once a claim or action is determined to be one covered by Section 76-a, Civil Rights Law § 70-a also applies. Section 70-a provides,

> A defendant in an action involving public petition and participation, as defined in [Section 76-a], may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that[] (a) costs and attorney's fees shall be recovered upon a demonstration . . . that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be

---

[3] The amendment applies retroactively. *See Palin v. New York Times Co.*, No. 17-CV-04853 (JSR), 2020 WL 7711593, at *3-5 (S.D.N.Y. Dec. 29, 2020).

supported by a substantial argument for the extension, modification or reversal of existing law[.]

N.Y. Civil Rights Law §§ 70-a(1). Unlike the previous version of this law, which provided that such costs and attorney's fees "*may* be recovered" upon a demonstration that the action was commenced without a substantial basis in fact and law – and thus left the award to the discretion of the trial court, *see West Branch Conservation Ass'n v. Planning Bd.*, 636 N.Y.S.2d 61 (2d Dep't 1995) – the 2020 amendment provides that in these situations, costs and attorney's fees "*shall* be recovered."

As noted above, Defendant has not briefed the issue of fees, and so has not addressed whether the present action has a substantial basis in fact and law – specifically, whether a libel action that is dismissed on the grounds on which this lawsuit is being dismissed can be found to have a "substantial basis" in fact and law. Nor has Defendant enlightened the court about whether a complaint filed prior to the November 2020 amendment to the anti-SLAPP law is governed by the new mandatory or the old discretionary standard. In fact, Defendant has not actually moved for an award of attorney's fees, and it certainly has not yet brought an "action, claim, cross claim or counterclaim" to recover its attorney's fees. A single sentence in a brief is not an appropriate basis on which to premise an award of attorney's fees under this statute – even in a frivolous libel suit like this one. The statute requires that *a pleading* of some sort be filed in order to collect attorney's fees; even a cross-motion for fees would appear to be inadequate under Section 70-a(1).

As the complaint is being dismissed before PPFA has filed an answer asserting any sort of claim, it would seem that, per the terms of the New York law, the Defendant must file a separate lawsuit in order to recover any attorneys' fees. [4]

---

[4] In this regard, it bears noting that Defendant did not answer and counterclaim and make a motion for judgment on the pleadings, which would have been judged by the same standard as a motion to dismiss. *Cleveland v. Caplaw*

18

Moreover, in light of the Second Circuit's decision in *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020), Planned Parenthood may have to address some interesting issues of law before it can collect an anti-SLAPP fee award.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted with prejudice.  The Clerk of Court is directed to remove Dkt. No. 18 from the Court's list of pending motions and to enter judgment dismissing the complaint, and to close the file.

Dated: July 27, 2021

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

---

*Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). While I appreciate that this ought not be a difference that makes a difference, I am bound by the terms of the SLAPP statute as drafted by the Legislature.